106     227
e206    1445
e206    1449

# Palairet *versus* Snyder.

1. Where, by the terms of a ground rent deed, a perpetual rent is reserved, with a proviso, that if the grantee, his heirs and assigns, should, within ten years from the date thereof, pay to the grantor a capitalized sum, and the arrearages of said rent, then said rent should cease and be extinguished, and the covenant for payment thereof should be void, said rent is not redeemable after said period has elapsed.

2. The Act of April 22, 1850, § 21 (P. L., 553), does not apply to such a deed.

3. Said Act of April 22, 1850, section 21, does not prohibit the reservation of a rent as above. It prohibits only the reservation of ground rents not perpetual in their inception, but to become perpetual upon the failure of the vendee to comply with a covenant or condition therein contained.

April 4, 1884. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J. absent.

ERROR to the Court of Common Pleas No. 1 of *Philadelphia county:* Of January Term, 1884, No. 162.

Amicable action, in covenant, between Lewis Snyder and Emma Matilda, his wife in her right, plaintiffs, and Richard Thomas Palairet, William Henry Miles Booty and Henry Hamilton Palairet, trustees, defendants. The action was entered by agreement with the same effect as if a writ of covenant had been issued to the first Monday of December, 1883, returned served, a declaration been filed, alleging a tender by the said plaintiff to the said defendants of the sum of $750, being the principal of the ground-rent hereinafter mentioned, and also $7.38, being the arrearages of the said rent to the date of tender, together with a deed of extinguishment of the said rent, and the refusal of the said trustees to accept the said sum so tendered, though tendered in lawful money such as required by the said deed, and the refusal of the said trustees to execute the said deed of extinguishment, contrary to the form and effect of the covenants of the said ground-rent deed; and the filing of a plea of covenants performed, payment with

leave, &c., on behalf of the said trustees, defendants. With the usual replication and issue.

And it was further agreed that the following facts shall be taken to be established with the same effect as if found by a special verdict of a jury, to wit:—

1. That on and prior to the fourth day of September, A. D. 1851, George Gregory Gardiner, John Gwalter Palairet, and John Campbell Cameron, were seised in fee of certain premises in the city of Philadelphia, situate on the south side of Wood street at the distance of one hundred and thirty-six feet westward from the west side of Schuylkill Fifth (now Eighteenth) street, in trust, among other things (under the terms of a certain deed of marriage settlement, dated the thirteenth day of April, 1843, and recorded at Philadelphia in Deed-book R. L. L. No. 15, page 50, &c. and 53, &c.), to sell and dispose of the same upon ground-rent or otherwise, as to them the said trustees shall seem most reasonable or expedient. " And in such conveyances there might, if deemed advisable, be given to the purchasers such right of purchasing or extinguishing such ground-rents, upon terms to be thereby fixed as should be deemed expedient."

2. That the said trustees for the time being, in full compliance with their powers and the provisions of the said trust did on the said fourth day of September, 1851, sell and convey the said premises to one Nathan Smedley, his heirs and assigns forever, reserving therefrom and thereout unto the said trustees, and the survivors and survivor of them, and the heirs and assigns of the survivor of them, upon the same trusts as the said premises were held at the time of the creation of this ground-rent,—

" The yearly rent or sum of forty-five dollars of lawful silver money of the United States of America, in equal half-yearly payments, on the twenty-fifth day of March and September, in every year hereafter, forever, without deduction, defalcation or abatement."

And in and by the said indenture, it was further provided: —" That if the said Nathan Smedley, his heirs or assigns, shall and do at any time within ten years from the date hereof, pay or cause to be paid to the said trustees, or the survivors or survivor of them, their or his heirs or assigns, the sum of seven hundred and fifty dollars lawful money as aforesaid, and the arrearages of the said yearly rent to the time of such payment, then the same shall forever thereafter cease and be extinguished, and the covenant for the payment thereof shall become void; and then they the said trustees and the survivors and survivor of them, their or his heirs or assigns, shall and will at the proper costs and charges in the law of the said

grantee, his heirs or assigns, seal and execute a sufficient release and discharge of the said yearly ground-rent hereby reserved to the said Nathan Smedley, his heirs and assigns forever, anything hereinbefore contained to the contrary thereof notwithstanding."

3. That the said Emma Matilda, in her own right, is now the sole owner of the said premises by divers mesne and lawful conveyances from the said Nathan Smedley.

4. That the defendants in this action are the trustees for the present time being, vested with the powers and estates of the said trustees of 1851, under the provisions of the aforesaid trust, and competent to extinguish the said ground-rent if such extinguishment can now be compelled.

5. That no payment of the principal moneys of the said rent was made or tendered within the period of ten years from the date of the said ground-rent deed, to wit, the fourth day of September, A. D. 1851, or until the twenty-third day of November, A. D. 1883, when all proper and necessary acts were done and performed on the part of the said Emma Matilda, to entitle her to pay the money and have the said ground-rent extinguished, and the covenant to pay the said rent then became void, provided the said Emma Matilda then had the right so to do.

If the court be of the opinion that the said plaintiffs are now entitled as of right to have the said ground-rent extinguished upon payment of the said sum of $757.38, then judgment to be entered for the plaintiffs in the sum of $1,000, to be released upon the execution of a proper deed of release and extinguishment by the defendants or the trustees for the time being (and their receipt of the said sum of $757.38), within thirty days from the entry of judgment; otherwise, judgment for the defendants. Either party to have the right to sue out a writ of error; costs to follow the judgment.

After argument the court entered judgment for the plaintiffs on the case stated, BIDDLE, J., filing the following opinion :—

The decision of this case depends entirely upon the construction to be put upon the Act of April 22, 1850, section second. It is in these words: "Whenever a deed or other instrument of writing conveying real estate, shall be made, wherein shall be contained a reservation of ground-rent to become perpetual upon the failure of a purchaser to comply with the condition therein contained, no such covenant or condition shall be so construed as to make such ground-rent a perpetual incumbrance upon said real estate ; and it shall or may be lawful for the purchaser at any time after the said ground-rent shall have fallen due to pay the full amount of

[*Palairet v.* Snyder.]

the same, and such payment shall be a complete discharge of, such real estate from the incumbrance aforesaid."

In the present case, after reserving a yearly ground-rent of forty-five dollars to be paid in equal half-yearly payments " in every year hereafter forever," it was further provided that if, at any time within ten years, the said Nathan Smedley shall pay the said sum of seven hundred and fifty dollars, and the arrearages of said rent to the time of payment, then the same shall forever thereafter cease and be extinguished, and the covenant for the payment thereof shall become void.

It may be true that there is no direct prohibition in our law against creating perpetual ground-rents, and there is certainly nothing in the section we have quoted which forbids it. But it is very clear to our minds that the legislature did not intend that they should be created from any failure or inability on the part of the tenant to avail himself of a privilege which the deed afforded him. That while the parties might, if they chose, make a perpetual rent by so expressing it in unmistakable words, they would not permit the court to do so by the construction of any condition which would produce that result. This rent at its creation was clearly not marketable as an irredeemable ground-rent. Certainly for ten years no one could truthfully designate it—it could only become so by the failure to pay on the day the sum designated.

Of the legislature's intent there can be no doubt, for subsequently, April 15, 1869, P. L., 47, they passed an Act entitled an Act for the extinguishment of irredeemable ground-rents, reciting that the policy of this Commonwealth has always been to encourage the free transmission of real estate, and to remove restraints on alienation, so that it is and is hereby declared necessary for the public use to provide a method of extinguishing such irredeemable ground-rents, having a due regard to private rights. This purpose, as to extinguishment of ground-rents, was defeated by the decision of Palairet's Appeal, 67 Pa. St., 488, which declared the law unconstitutional. The fact, however, remains that in the opinion of the legislature, these rents were contrary to public policy and should not be permitted to exist, and when then we come to consider these enactments in this regard we should not endeavor to defeat, by narrow technical construction, their obvious meanings.

Judgment for plaintiffs.

The defendants took this writ of error, assigning for error said judgment for plaintiffs.

*Angelo T. Freedley* and *William Henry Rawle*, for the plaintiffs in error.—It may be that the legislature intended by the

[Palairet *v.* Snyder.]

Act of 1850 to embrace ground-rents such as the one in question. It was so considered by some at that time, and attention was at once called to it in an able article in 2 American Law Register, 589. But whether it *has* done so, is another question. The rules of construction of statutes which merely give or increase a remedy, are different from the rules applicable to those which affect a right, or, still more, an estate; an estate whose market value is taken from one to be given to another. In the latter case, and especially where there is no ambiguity as to the words of the statute, no argument is permitted as to "the spirit of the statute," or "the equity of the statute."

In this case the owners of the land conveyed the same to Nathan Smedley, in consideration of the payment of an annual rent of forty-five dollars, "*in each and every year theraafter forever*," and they further gave the said Nathan Smedley an option of extinguishing the said rent by paying a lump sum of $750 before September, 1861. The option was not obligatory upon him. He did not covenant to pay the lump sum. On the contrary, he declined to exercise this option, and it expired over twenty-two years ago. The plaintiffs below who were not the original vendees, now demand that this unilateral option shall be indefinitely extended for their benefit, and that the defendants shall be deprived of their estate in the rent against their consent, and that they shall convey such estate to the said plaintiffs. The vendor and his assigns have an estate in the rent, and the vendee and his assigns have an estate in the land subject to the rent. Each estate is of the same dignity in the law as the other, and of neither can the owner be deprived against his assent, and each estate is, as was said in Palairet's Appeal, 17 P. F. Smith, 487, "an estate in fee simple, descendible, devisable, alienable." Apart from certain rules of law which have no application to this case, there is none which dictates or prescribes the duration or quantity of estate which one man may sell to another. No rule of law exists which prohibits a vendor from parting with his property in consideration of an annual rent. Thus, leasehold estates for long term of years are very common in England, in New York, and are not unknown here. Cadwalader *v.* App, 31 P. F. Smith, 194, was a case of a lease for ten thousand years at an annual rent of thirteen dollars and thirty-three cents. And no legal distinction can be suggested between a lease for one or ten thousand years with a *reddendum*, and the grant of an estate in fee with a *reddendum*. And the insertion of a provision whereby the *reddendum* can be capitalized and paid off is, like a clause of re-entry or the like, merely one of the incidents of the contract. It may be

altogether omitted, and if so the duration of the estate granted and the duration of the *reddendum* will be co-existent. They will begin and end at the same time. Hence, where the vendor has given the vendee a mere option to extinguish the rent within a given time by the payment of a lump sum, there is no rule which compels him to indefinitely extend that option to the assigns of the vendee, against the vendor's will. An owner may impose any lawful condition as the consideration of parting with his property.

There were and are three classes of ground-rent deeds in Pennsylvania:—

1. Those in which the rent is perpetual, and no provision is made for capitalizing the *reddendum*.

2. Those in which the *reddendum* is perpetual, but provision is made at the option of the purchaser, for capitalizing it by payment of a gross sum before, at, or after a certain named time. If the option is not exercised according to its terms, the *reddendum* continues to be perpetual.

3. Those in which the *reddendum* is not perpetual, but, like the principal of a mortgage debt, falls due and is demandable by the grantor within a certain time, and in default of payment, thereafter becomes perpetual.

Over fifty years ago, certain vendees attempted to do precisely what the present defendants in error now attempt, but their petition was dismissed by the court as being " manifestly inequitable:" Shoemaker's Estate, 1 Rawle, 89. To produce this " manifestly inequitable " result, the defendants in error base their application solely upon the Act of 22d April, 1850, section 21, P. L., 553, Purdon, 748.

Evidently the first class of cases does not come within the statute. As to the second class of cases. The value of an investment ordinarily depends largely upon its length of life. A loan which lacks twenty or thirty years of its maturity is worth a fourth or a third more in the market than one which may be paid off next year. The market value of a *reddendum* which cannot be compulsorily paid off at all is, equally, enormously greater than one which can. Hence the effect contended to be given to the statute is to take the market value of the rent away from its owner and give it to the owner of the land. No plea of convenience or even of public policy can justify this, as was decided by this court in Palairet's Appeal, 17 P. F. Smith, 479, where an Act of the legislature having declared that it was "necessary for the public use to provide a method of extinguishing irredeemable ground-rents, having a due regard for private rights," it was held that this could not be done—that it was a taking of private property for private use, and that no legislative declaration could make that public

which was simply private, irrespective of general public convenience.

Now in the present deed, the *reddendum* has four qualities which take it out of the application of the Act of 1850.

1. The deed does *not* contain any "reservation of ground-rent to become perpetual upon the failure of the purchaser to comply with the conditions therein contained." On the contrary, a perpetual rent was stipulated and expressly contracted for. The rent was *not* to become perpetual upon non-compliance with any condition. It was in its *origin* perpetual, and this was the essence of the contract. To this was super-added a mere option for a limited time, not compulsory on the purchaser, but merely permissive. No "condition" was imposed upon the "purchaser." There was no penalty imposed for his "failure to comply."

2. There is here *no* "covenant or condition to be construed to make the rent a perpetual incumbrance."

3. The ground-rent never has "*fallen due.*" It is not a lien,—it is an estate. No time was fixed within which it *must* be redeemed, nor did the purchaser covenant that he would pay it in a definite time, or at any time; he had merely an option to do so.

4. The ground-rent is not an "incumbrance." It has none of the qualities of an incumbrance—the arrears may be, but the *reddendum* itself is *an estate*, not susceptible of discharge by a sheriff's sale or any process known to the law. Any attempt to make it otherwise has always failed: *In re* Shoemaker, 1 Rawle, 89; *Ex parte* Huff, 2 Barr., 227. The only decision upon the Act of 1850 favors our view: Skelly's Appeal, 11 W. N. C., 11, which decides that the Act of 1850 can only be applied to cases falling within its terms, and does not prevent a postponement of redemption by the contract of the parties.

But the third class of ground-rents does literally and exactly fulfil every provision of the Act; and it is to this class that the Act of 1850 solely relates. There, the evident intent of the parties is to fix a time for redemption. They contract not for an estate, but for a mere security—a lien or incumbrance. Of this species of rents, Springer *v.* Phillips, 21 P. F. Smith, 60, is an example. There are also others, see Recorder's Deed-book, Philadelphia county, G. W. C., No. 89, page 434; Id., page 439, &c. Thus, in the language of the statute: (1.) The ground-rent *does* become perpetual *solely* by reason of the failure of the purchaser to comply with the conditions. (2.) There *is* a "covenant or condition to be construed." (3.) As the purchaser covenants to pay, a definite time is fixed for redemption, after which the rent has "*fallen due.*" (4.) The

ground-rent is a mere *incumbrance.* Such ground-rents were in reality in the nature of mortgages, with a superadded limitation in the nature of a penalty in case of breach of the covenant to pay within the specified time.

It may be greatly doubted whether the application of the Act of 1850 to this species of rents would not render the statute unconstitutional within Palairet's Appeal, 17 P. F. S., 479.

*John Bethell Uhle,* for the defendants in error.—The following dates contain the key to the correct solution of this controversy:

1849, May 5. Reservation of the rent in Elcock *v.* Conover, 11 W. N. C., 216.

1850, April 22. Act of Assembly, "intended to destroy irredeemable ground-rents;" per LUDLOW, P. J.: Skelly *v.* Ogden, 9 W. N. C., 366 (s. c., 11 W. N. C., 12, in this court.)

1851, September 4. Reservation of this ground-rent.

1861, September 4. Last day for extinguishment of this rent, under the literal terms of the covenant in the deed.

1863, November 23. Tender and refusal of the redemption moneys, and of the deed for the extinguishment of this rent.

This ground-rent is within the provisions of the Act of 1850. A deed or indenture, in the usual form, was made, conveying certain premises in fee, and expressly reserving the rent. The purchaser named in the deed, "his heirs or assigns," were given, by express covenant, the right to pay the redemption moneys, on condition that such payment be made "at any time within ten years from the date" of the deed. As soon, therefore, as this deed was made, the redemption moneys had "fallen due" or become payable.

The Act of 1850, having been enacted prior to the creation of this ground-rent, must be read into the deed, and the argument as to taking away a vested right of the covenantees is, therefore, inapplicable to the case. If there were any doubts as to the right to redeem under the Act of 1850, it is removed by the supplement of April 19, 1864, P. L., 487; Purd. Dig., 749, pl. 5. The plaintiffs in error admit that the legislature intended to effect the result we contend for, but found technical arguments upon the literal term "fallen due," "incumbrance," etc., as applicable to a lien merely, whereas they are equally applicable to a rent reserved, subject to extinguishment by payment of the redemption money. There are, practically no ground-rents in existence such as plaintiffs in error describe in their third classification, and to confine the Act to such theoretical rents will render it wholly illusory. For thirty years since the passage of the Act the construction of

[Palairet *v.* Snyder.]

it has been as we now maintain it should be, and very many similar ground rents have been extinguished under the advice of able counsel.

Mr. Justice STERRETT delivered the opinion of the court, October 6, 1884.

It may be that the twenty-first section of the Act of April 22, 1850, was intended to apply to ground-rent deeds such as that under consideration; but, in our opinion, the language employed will not admit of that construction. The Act declares, " Whenever a deed or other instrument of writing conveying real estate shall be made, wherein shall be contained a reservation of ground-rent to become perpetual, upon the failure of the purchaser to comply with the conditions therein contained, no such covenant or condition shall be so construed as to make the said ground-rent a perpetual incumbrance upon the said real estate; but it shall and may be lawful for the purchaser thereof, at any time after said ground-rent shall have fallen due, to pay the full amount of the same, and such payment shall be a complete discharge of such real estate from the incumbrance aforesaid: " Purd., 748, pl. 2.

The deed, recited in the case stated, after reserving a yearly ground-rent of forty-five dollars, payable in half yearly instalments of twenty-seven $\frac{50}{100}$ dollars each " in every year hereafter forever," contains a provision that if the grantee " his heirs or assigns shall and do at any time, within ten years from the date hereof, pay or cause to be paid to the grantors, or survivors or survivor of them, their or his heirs or assigns the sum of seven hundred and fifty dollars and the arrearages of such yearly rent to the time of such payment, then the same shall forever thereafter cease and be extinguished, and the covenant for payment thereof shall become void; " and the grantors shall then execute and deliver to the grantee, his heirs and assigns, a sufficient release and discharge of the said yearly rent. It will be observed that this instrument differs from an ordinary irredeemable ground-rent deed only in this, that it secures to the grantee an option which he may or may not, according to his own pleasure, exercise within the time specified in the deed. It contains no covenant on his part to pay the capitalized sum, within the time named, or at any time. In this respect it differs widely from the deed under consideration in Springer *v.* Phillips, 21 P. F. Smith, 60. The ground rent reserved is in terms perpetual, subject only to the unilateral privilege given to the grantee which must be exercised by him, if at all, during the ten years and not thereafter. It contains no condition, upon the failure to comply with which by the grantee, the ground-rent becomes perpetual, and hence

[Palairet *v.* Snyder.]

it does not possess the distinguishing feature that appears to have been contemplated by the framers of the statute. If the language they employed means anything, they must have had in view an instrument containing, as the Act itself expresses it, a reservation of ground-rent, not perpetual in its inception, but to become perpetual upon the failure of the vendee to comply with a covenant or condition, to that effect, contained in the instrument; and, hence it is provided that no such covenant or condition shall be so construed as to make such ground-rent a perpetual incumbrance, and it shall be lawful for the purchaser, at any time after the ground-rent shall have fallen due, to pay the full amount thereof, etc. In the deed before us there is no provision, express or implied, that the ground-rent therein reserved shall become perpetual upon the failure of the vendee to comply with any covenant or condition therein contained. On the contrary, it contains an express covenant for the payment, perpetually, of the rent reserved. It is to be paid semi-annually, "in every year hereafter forever;" and this is the very essence of the contract. To this is superadded a naked, unilateral option, limited as to time long since expired, wholly permissive, and in no sense whatever obligatory on the grantee, his heirs or assigns; and hence there is no covenant or condition to be broken, or so construed as to make the rent a perpetual incumbrance. In its very inception the rent reserved was perpetual and continued to be so. We are therefore of opinion that the Act does not apply to ground-rent deeds of the class to which the one before us belongs. But there is a class of ground-rents to which it is perhaps applicable, viz: those in which the annual rent is not perpetual, but the capitalized rent, like the principal of a mortgage debt, falls due and is demandable by the grantor, at or within a certain time, and in default of payment, the rent thereafter becomes perpetual. The only question with which we are now concerned, however, is whether upon a fair and reasonable construction of the Act, the deed before us is within its provisions. For reasons that have been briefly suggested and others that might be added, we think it is not; and hence the defendants in the case stated were entitled to judgment for costs.

Judgment reversed, and judgment on the case stated is now entered in favor of the plaintiffs in error defendants in the court below.