# Norris, Appellant, *v.* Crowe.

*Equity—Mistake—Ignorance of the law.*

In no case is ignorance or mistake of the law with the full knowledge of the facts, per se a ground for equitable relief. If the evidence shows, that in addition there would be great hardship in enforcing the contract made in ignorance of the law, equity may afford relief. But between the border of great hardship and actual fraud there are many contracts made in ignorance of the law, yet which result in no inequitable consequences from the enforcement of the general rule. In such cases the rule should be enforced.

*Ground rents—Agreement as to reduction of rent—Mistake in law—Equity—Remedy at law.*

Where an owner of a ground rent agreed in writing under a threat of payment of principal to reduce the rent from six per cent to five per cent, and both the owner of the ground rent and the terre-tenant were ignorant at the time of the agreement of the decision in Palairet v. Snyder, 106 Pa. 227, in which it was held that a ground rent of the kind in question was an irredeemable one, the mistake in law is no ground for the interference of a court of equity to cancel the agreement in the interest of the owner of the ground rent. In such a case there is no element of such extreme hardship as will call for a departure from the general rule.

In the above case after the ground landlord discovered his mistake he brought an action at law to recover the full six per cent, and while this action was pending filed a bill in equity to cancel the agreement. *Held*, that the bill should be dismissed, because (1) plaintiff had a full, adequate and convenient remedy at law, and (2) equity had no jurisdiction to correct the mistake of law alleged.

Argued Jan. 19, 1903.   Appeal, No. 277, Jan. T., 1902, by plaintiff, from decree of C. P. No. 4, Phila. Co., Dec. T., 1900, No. 901, dismissing bill in equity in case of Isaac Norris v. James Crowe and the Ninth United Presbyterian Congregation of Philadelphia.   Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Bill in equity to cancel an agreement in writing under seal.

On demurrer, WILLSON, J., filed the following opinion :

On December 7, 1866, Charles Norris et al., trustees of the Fairhill estate, and Samuel Norris, made a conveyance to James Crowe of a certain lot of ground situate on the west side of Hancock street and south side of Susquehanna avenue, reserving thereout a yearly six per cent ground rent of $340, payable in equal half yearly installments on the first day of January and July in each year thereafter.   The deed also contained a provision that in case the grantee, his heirs and assigns, should, within ten years from the date of the deed, pay to the grantors, or their heirs or assigns, the sum of $5,666.67, and the arrears of rent, the rent reserved should cease and be extinguished.   The said James Crowe took title to the said premises only to hold it for the benefit of the church, of which he was pastor, and subsequently, on December 13, 1893, by deed, duly recorded, he conveyed the same to the Ninth United Presbyterian Congregation of Philadelphia, the defendant in this case.   By proceedings in partition the estate in the grantors became vested in Isaac Norris, Sr., and, subsequently, in the plaintiff in this proceeding.

The proper discussion of the case does not require any fuller recital of the matters which have been referred to.   The real controversy arises upon what took place in the year 1891. The bill averred that in May of that year a committee of the defendant corporation called upon J. Parker Norris, the brother of the plaintiff, and who acted for him, and informed the said Mr. Norris that the defendant would pay off the ground rent, unless the yearly rent was reduced from six to five per cent per annum.   In consequence of this movement on the part of the defendant corporation, an agreement, under seal, was entered into between the plaintiff, acting by his brother, J. Parker Norris, and the defendant, in the following language :

" Memorandum of agreement made this twelfth day of June, A. D. 1891, between the Norris Square United Presbyterian Church of the one part, and Isaac Norris, M. D., of the other part.

" Witnesseth, that in consideration of the said Isaac Norris, M. D., not demanding more than five per cent interest on a certain annual ground rent reserved by deed dated December 7, 1866, the said Norris Square United Presbyterian Church, doth hereby agree that they will not pay off the principal of the said ground rent until the expiration, of five (5) years after the first day of July, 1891, and the said Isaac Norris, M. D., doth hereby promise and agree that he will not, at any time, ask, demand, or sue for more than five per cent interest on said ground rent so long as the said church continues to pay the same with reasonable punctuality.

" Witness our hands and seals the day and year aforesaid.

" ISAAC NORRIS, M. D.,
" By his attorney in fact,
" J. PARKER NORRIS.   [Seal]
" ROBERT G. BITTEN,
" [Corporate Seal]                        President.
" C. W. CROWE,
" Secretary Board of Trustees."

At the time this agreement was entered into, all parties concerned in it were of the impression that the defendant corporation had a right at any time to make payment of the principal sum of the ground rent, and thereby extinguish the ground rent; in other words, that the ground rent was a redeemable ground rent.   They were not aware that it had been decided by the Supreme Court in Palairet v. Snyder, 106 Pa. 227, that, upon the failure of the covenantor in the ground rent deed to pay the principal sum within the time limited in such a deed, the ground rent became irredeemable.   However, it must be regarded as beyond question that, if Dr. Norris, acting through his attorney in fact, had not consented to the reduction of the annual rent, and the defendant corporation had carried out its expressed intention of paying off the said rent, payment would have been received and the ground rent would have been extinguished.   This no doubt would have been done under a

mistaken view of the law. At the same time, if it had been carried into effect, the act would unquestionably have been beyond recall.

The plaintiff, by this proceeding, endeavors to have the agreement referred to abrogated and to reinstate himself in the position in which he was before that agreement was entered into, notwithstanding for a period of about ten years the church corporation has paid the annually accruing ground rent as reduced, and the same has been accepted by the plaintiff. It is claimed that this can be done, because the parties entered into the agreement in question under a mistaken view of the law.

Suit was brought in this court upon the ground rent deed against the defendant in March, 1901, for the purpose of recovering the amount due on January 1, 1901, at the full rate of six per cent instead of five. In that proceeding the defendant filed an affidavit of defense, setting up the matters which have been previously stated, and the court, after argument, refused to enter judgment for the plaintiff. Nothing further has been done in that case since the refusal to enter judgment.

We are now asked to decree that the defendant shall surrender for cancelation the agreement before mentioned, and be enjoined from setting up the agreement as defense in the action at law referred to, or in any future action.

It seems to us that it would be a sufficient reason for us to sustain the demurrer which has been filed in this case, that the plaintiff has a full and complete opportunity, in the case at law which he has brought, to have the question upon which he relies fully and conclusively determined as between him and the defendant. In other words, he has a full and adequate remedy at law, and he has, by instituting action upon the covenant contained in the ground rent deed, already attempted to bring the question which is now at issue to determination upon the law side of the court. Nevertheless, it may be well for us to go further in the case and express our views in regard to the main question involved in it.

As has already been said, the parties to the agreement reducing the amount of annual rent from six to five per cent, entered into it with a mistaken view as to what their legal rights were. Ordinarily, parties will not be relieved against

the consequence of a mistake of the law, even though it be mutual. This principle is so fundamental as to have been embodied in a well-known maxim. It may be true, as has been argued before us, that the rule has its exceptions, and that where the mistake has been one which does not involve ignorance of a general principle of the law, but rather ignorance as to the legal effect of a particular agreement or transaction in which the parties are interested, then a court of equity may relieve against the effect of a mistake, in order to avoid manifest injustice. Even the presence of seals attached to such an agreement might constitute no obstacle to relief, notwithstanding the general principle that the presence of a seal imports a consideration. If, however, the case required us to pass upon the question, we are inclined to the opinion that the plaintiff could not have the relief which he seeks, upon the ground relied upon by him, viz : that his case falls under an exceptional class of a mutual mistake relative peculiarly and exclusively, to the rights of the parties growing out of a particular agreement or transaction, as distinguished from a mistake concerning a general and larger principle of law. We rather think that even upon that aspect of the question the plaintiff ought to be held to his agreement, by an application of the general and salutary principle which has been referred to, that when two persons solemnly enter into an agreement and act upon it for a term of years on the common understanding that an advantage accrues to one of the parties or a disadvantage to the other, the fact that there was a mistake made as to their legal rights and obligations will not relieve either party from an obligation so entered into and acted upon. Besides, it is impossible not to be influenced by the thought that the agreement which the parties entered into, although it was made under a mistaken view of the law, withheld the defendant corporation from taking such steps as would have resulted in an extinguishment of the ground rent estate. Such an extinguishment was evidently not desired by the plaintiff or his representative, and it was averted by the making of the agreement which the plaintiff now endeavors to set aside. That was a real advantage which he thus secured, and he obtained it by entering into a formal agreement, to which he attached the ordinary evidence of a valuable consideration. For the

reason stated, we think that he must be held to the bargain which he then made, and that he cannot be relieved from it, notwithstanding he and the defendant now know and admit that they acted under a mistaken impression of what their legal rights and obligations were.

The demurrer must, therefore, be sustained and the bill dismissed with costs.

*Error assigned* was the decree of the court.

*John G. Johnson,* with him *Horace M. Rumsey,* for appellant. —The question of mistake is peculiarly a question of equitable jurisdiction: Green v. Morris, etc., R. R. Co., 12 N. J. Eq. 165.

Equity abhors a multiplicity of suits, and where, in a single suit, that condition can be avoided by enjoining its use, equity will perform that office: Gwinn v. Lee, 6 Pa. Superior Ct. 646; Johnston v. Price, 172 Pa. 427; Walters v. McElroy, 151 Pa. 549; Bitting's Appeal, 105 Pa. 517; Penna. Lead Company's Appeal, 96 Pa. 116; Grubb's Appeal, 90 Pa. 228; Scheetz's Appeal, 35 Pa. 88.

The pending suit at law is not a bar to the equity proceeding: Hessenbruch v. Markle, 194 Pa. 581; Harrisburg v. Ry. Co., 1 Pa. Dist. Rep. 192; Raessler v. Benefit Assn., 3 Pa. C. C. Rep. 393; Watson v. Jones, 80 U. S. 679; Griswold v. Hazard, 141 U. S. 260 (11 Sup. Ct. Repr. 972); Green v. R. R. Co., 12 N. J. Eq. 165.

The ground rent was irredeemable and there was no consideration for the agreement: Walstrom v. Hopkins, 103 Pa. 118; McNutt v. Loney, 153 Pa. 281; Palairet v. Snyder, 106 Pa. 227.

Equity will relieve from a mutual mistake of law, and where an instrument has been executed under such mutual mistake of law, will enjoin its use in an action of law and will declare it null and void: Snell v. Ins. Co., 98 U. S. 85; Beauchamp v. Winn, L. R. 6 H. L. 223; Jones v. Clifford, L. R. 3 Chan. Div. 779; Underwood v. Brockman, 4 Dana's Repr. 309; Green v. R. R. Co., 12 N. J. Eq. 165; Frevall v. Fitch, 5 Whar. 325; Bishop v. Reed, 3 W. & S. 261; Gross v. Leber, 47 Pa. 520; Wilson v. Ott, 160 Pa. 433; McKibben v. Doyle,

173 Pa. 579; Potter's Est., 6 Pa. Superior Ct. 627; Russell's Appeal, 75 Pa. 269; Wilson v. Ott, 173 Pa. 253; Goettel v. Sage, 117 Pa. 298.

Where certain facts are assumed by both parties on the basis of a contract, and it subsequently appears such facts do not exist, the contract is inoperative: Fink v. Smith, 170 Pa. 124; Miles v. Stevens, 3 Pa. 21; Frevall v. Fitch, 5 Whar. 325; Horbach v. Gray, 8 Watts, 492.

No paper-book filed or argument offered for appellee.

OPINION BY MR. JUSTICE DEAN, July 9, 1903:

In this appeal appellee has given us no aid by filing a paper-book and we are left to dispose of the issue by the presentation of appellant's side of it and on the carefully considered opinion of the learned judge of the court below. The facts are about as follows: On December 7, 1866, the trustees of the Norris estate conveyed to Rev. James Crowe, minister of the Ninth Presbyterian congregation of Philadelphia, a lot of ground on the corner of Hancock street and Susquehanna avenue, reserving thereout a yearly six per cent ground rent of $340. Afterwards, in 1893, the Reverend Crowe conveyed the property to his congregation which at that date had become incorporated. By proceedings in partition of the estate of Isaac Norris, Sr., in 1867, this particular ground rent became the property of Dr. Isaac Norris, this appellant. J. Parker Norris, his brother, was in 1891 his attorney in fact, and in that year a committee of the church corporation called upon and notified him, that unless the ground rent was reduced from six to five per cent the congregation would pay it off. Both parties assumed that the ground rent was redeemable and therefore could be paid off at the option of the lot owner. It was agreed, that the reduction to five per cent should be made, but that the option should not be exercised for five years; thereupon, the following agreement in writing, signed and sealed, was executed:

" That in consideration of the said Isaac Norris, M. D., not demanding more than five per cent interest on a certain annual ground rent reserved by deed dated December 7, 1866, the said, the Norris Square United Presbyterian Church, doth hereby agree that they will not pay off the principal of the said ground

rent until the expiration of five (5) years after the first day of July, 1891, and the said Isaac Norris, M. D., doth hereby promise and agree that he will not, at any time, ask, demand, or sue for more than five per cent interest on said ground rent so long as the said church continues to pay the same with reasonable punctuality."

The case of Palairet v. Snyder, 106 Pa. 227, appeal from common pleas, No. 1, of Philadelphia, had been decided by this court in 1884. The reservation of ground rent in that deed was substantially the same in terms as in the one before us, and we held the ground rent was irredeemable; although that case had been the law for seven years both parties were ignorant of it. The congregation thereafter continued to pay the ground rent at five per cent as stipulated in the agreement and Norris continued to accept the same without objection until January 28, 1901, when Norris discovered the decision in Palairet v. Snyder and concluded that his ground rent was irredeemable; he at once demanded from the congregation six per cent and on refusal to pay brought assumpsit in common pleas, No. 4, of Philadelphia. To this the congregation filed an affidavit of defense denying liability for more than five per cent and averring, the stipulation in the agreement, as limiting liability to that amount. While the record of the action at law stood in this condition, on January 10, 1902, Norris filed this bill, praying that the agreement be declared void and that it be delivered up for cancelation on the ground that it was entered into under a mistake as to the law by both parties, and further, specially praying that defendant be enjoined from setting it up as a defense in the action of assumpsit. The defendant demurred on the grounds that an action at law involving the same matter was then pending and that on the face of the bill plaintiff had no equity of which a court of equity would take jurisdiction. The court below sustained the demurrer and dismissed the bill, first, because plaintiff had an adequate remedy at law; and second, because the mistake of law was one which under the facts averred in the bill, equity would not relieve against.

We think that plaintiff had an adequate remedy at law. He had brought his action in assumpsit and defendant had filed affidavit disclosing fully its defense, based on the agreement.

At the trial plaintiff would have offered his deed of 1886 to Reverend Crowe reserving his six per cent ground rent; defendant would then have put in evidence the agreement of June 13, 1891; plaintiff would then have replied with evidence of mutual mistake of the law by the parties; it would then have been for the court to interpret the agreement and declare its effect in view of the undisputed evidence and to have directed a verdict. Why would not this have been an adjudication of the very issue raised by this bill and demurrer? It is suggested, that it would not have been an adequate or convenient remedy because suits could still have been brought in the future for each six per cent annual ground rent as it fell due. We do not think so; the judgment would have been res adjudicata as to whether the ground rent was five or six per cent. If plaintiff had won he could have brought suit for six per cent and defendant could have defended only on proof of payment of that rate; but if defendant had won and plaintiff had sued for six per cent, plaintiff would have lost his case; obviously one suit at law would have ended litigation. We think the remedy at law was both adequate and convenient and that the court below might properly have dismissed the bill on this ground alone.

But probably, because the same question would have had to be determined in the action at law, that is, the effect of the agreement made under a mutual mistake of law, the court saw fit to go further, and determine whether on the facts the plaintiff should in equity be relieved from the consequence of it. The maxim, " Ignorantia legis neminem excusat " undoubtedly applies where the ignorance is of a well known rule of law, or as it is sometimes stated, ignorance of a general rule of law; but where the ignorance is of the law is specially applicable to the determination of a private right and the ignorant party complains because he has been prejudiced by the contract, it does not follow that equity will in all cases afford relief. By simply filing a demurrer, of course, the defendant admits the material averments of the bill and the material averment is, that the agreement was prompted by a mutual ignorance of the law as applicable to reservations of ground rent in the terms incorporated in this deed; both parties acting in the belief that this ground rent was redeemable, whereas in law it was not.

Will equity under these facts afford plaintiff relief from the consequences of his ignorance of the law? Under what circumstances and as to what contracts the maxim would be enforced seems to have been first fully discussed by this court in Good v. Herr, 7 W. & S. 253, in an elaborate opinion by ROGERS, J. In that case a childless man died intestate possessed of a large estate in land, leaving a widow, two uncles and an aunt living, and children of two uncles who were dead. The widow accepted one of the purparts of the land at the valuation of $20,000 and entered into recognizance to pay to all persons entitled thereto, their respective shares. She paid to each of the brothers and the sister living one fifth and to the children of each deceased brother as representing their fathers per stirpes one fifth. All parties believed at the time that the payments were in accord with the law of descent; all were ignorant that the two uncles and aunt were entitled to the whole and the nephews and nieces to nothing. All on receiving the money executed releases to the widow. One of the surviving brothers having, after receiving the money and executing the release, died, his administrator discovered that instead of one fifth he had been entitled to one third and brought suit against the widow for the difference. When she set up the release, he sought to avoid it by showing mutual ignorance of the law of descent by all parties; each being of the belief that the children were entitled to the shares of their parents. There was no question but that at the time of the distribution all parties were ignorant of the law and that was the only fact on which the release could be treated as void. By sustaining it the surviving brothers and sister lost two fifths of the estate; by declaring it void the widow would have had to pay over again the two fifths paid to the nephews and nieces.

There was no serious hardship in the case; the estate remained in the family of the dead brother; his brothers and sister got a fraction less than the law allowed them; the nephews and nieces a fraction more. It was a case of ignorance of the law alone and this court declined to set aside the release. In the opinion, the court cites a number of authorities from the Supreme Court of the United States, as well as Story's Equity Jurisprudence in support of the rule, that mere ignorance of the law itself is no ground for relief in equity and concludes thus:

" We grant that, where there is a mistake of a clear, well established and well known principle of law, whether common or statute law (for in this respect we can conceive no difference), equity will lay hold of slight circumstances to raise a presumption that there has been some undue influence, imposition, mental imbecility, surprise or confidence abused, but it is obvious that, in such cases, the mistake itself is not the foundation of relief, but the relief is had on entirely independent grounds, so as not to impinge the general rule. We are therefore of the opinion that in no case is ignorance or mistake of the law, with a full knowledge of the facts, per se, a ground for equitable relief."

Justice ROGERS admits there are rare exceptions to the rule and we concede that the trend of decisions in our state has been to multiply the exceptions as witness: Heacock v. Fly, 14 Pa. 540; Peters v. Florence, 38 Pa. 194; Gross v. Leber, 47 Pa. 520; Whelen's Appeal, 70 Pa. 410; Goettel v. Sage, 117 Pa. 298; Wilson v. Ott, 173 Pa. 253, and perhaps others; but in each of the cases cited the relief granted was not based solely on the ground of ignorance of the law; but there were in addition circumstances of great hardship resulting from the ignorance, or, in addition to the mistake of law, facts pointing strongly towards fraud or undue influence, yet which would not have been so certainly established as to warrant setting aside the contract.

Notwithstanding the remarks of McCOLLUM, C. J., in Wilson v. Ott, supra, the last case cited, tending to throw doubt on the continued existence of the rule in Good v. Herr, supra, yet it will be noticed he cites Good v. Herr and distinguishes it from the one before him. What he says in disparagement of the rule is based on an essay in the American Jurist, and was not necessary to a decision of the case before him and therefore to some extent is dicta. The case before him was a " hard " case in which if the contract had been enforced according to law the defendant would have been compelled to pay $4,000 for a title they did not get, a case of gross hardship clearly constituting it an exception to the rule; therefore no assault on the general rule was necessary. This is the Pennsylvania case on which appellant seems to most confidently rely. But nevertheless, we adhere to that rule as the law of this commonwealth, that

is, "In no case is ignorance or mistake of the law with a full knowledge of the facts, per se a ground for equitable relief."

If the evidence shows, that in addition there would be great hardship in enforcing the contract made in ignorance of the law, equity may afford relief. But between the border of great hardship and actual fraud there are many contracts made in ignorance of the law; yet which result in no inequitable consequences from the enforcement of the general rule. In such cases the rule should be enforced. The principle of the inviolability of contracts made with a full knowledge of the facts, and where there has been no overreaching or serious injury, should not be disturbed for slight reasons. There are very few cases where the title of a grantee of land has failed that the failure is not the result of ignorance of law by the grantee or of his counsel; the ignorance may only be demonstrated in a subsequent judicial trial, yet the legal theory is, that the law as announced at the trial was always the law though its first promulgation may have been only at that particular trial.

But a case directly in point is decided by the Supreme Court of California reported in 20 Cal. 637, and in 81 Amer. Decisions, 137, Kenyon v. Welty. In this case a contract was entered into by both parties under the belief that the law had been established by a decision of the Supreme Court made some time before. Clearly, both parties entered into the contract under the view of the law as announced by the Supreme Court. Sometime after, the court overruled its decision in the first case, and an action was brought to set aside the agreement on the ground that it had been made because of a mutual mistake of law. The court refused to disturb the contract saying: "Indeed the weight of authority in the United States is, that mistakes (of law), unless accompanied with special circumstances, such as misrepresentation, undue influence or misplaced confidence, constitute no ground for relief."

In the case before us there was no new law announced relating to contracts, in Palairet v. Snyder, supra, of which plaintiff might easily have been ignorant. That case only announces a law old as English law, that is, that where the grantee of land by deed covenants to pay annually forever an

annual rental of a certain sum of money, unless, within ten years he pays the full purchase money for the land, and he fails to pay the purchase money within the ten years, the annual rental becomes perpetual. It only promulgates the old law that parties are bound by their contracts; it would have been new law if this court had decided they were not. This, however, was the law of which plaintiff was ignorant; by reason of his ignorance, in an agreement under seal, he made a reduction of one per cent in the annual rental because he believed if the reduction was not made defendants would pay the principal; the only reasonable inference is, because his investment at five per cent was better than he could get elsewhere. No misrepresentation as to the law was made to him by anybody; law books and lawyers were thick around him but he did not take the trouble to inquire; he was induced to enter into the bargain because of its profit to him. It is just as profitable now, for while the legal rate of interest is six per cent, the commercial rate is five or less. As he avers, the ignorance of the law was mutual; if plaintiff had not entered into the agreement, defendants, in equity and good conscience, could then and there have paid off and extinguished the ground rent; by their mistake that opportunity was lost; by his mistake he has lost nothing that he expected to make by the bargain. We can see no hardship in this contract which should move a chancellor to reach forth his hand and destroy it.

As to the question of want of consideration, the plaintiff suffers no hardship from his contract which will move equity to rescind it; the contract then is in full force; it met the approval of plaintiff when he signed it; he got the consideration he demanded. The seal imports a consideration; on its face the contract expresses one; therefore, as long as equity refuses to abrogate it, it must be taken to be what it purports to be, a good contract in law.

The decree of the court below is affirmed and the appeal is dismissed at costs of appellant.