Klugman et vir, Appellants, *v.* Gimbel Brothers, Inc.

Argued March 21, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

270

*Ernest Ray White,* for plaintiffs, appellants.

*Albert C. Gekoski,* for defendant, appellee.

*Edward B. Joseph,* with him *David F. Kaliner,* for additional defendant, appellee.

OPINION BY FLOOD, J., June 13, 1962:

In this case compulsory arbitration proceedings before three members of the bar resulted in an award for the wife-plaintiff against the original defendant, and for the latter over against the additional defendant. The additional defendant alone appealed and the plaintiff entered judgment on the award against the original defendant. During the second term after the entry of the judgment the court below permitted the original defendant to join in the appeal of the additional defendant and the plaintiff was thereafter, over protest, required to retry her case de novo. She has appealed from orders of the court below dismissing her exceptions to a decision of the trial judge in favor of the original defendant and entering judgment for that defend-

ant. The question before us is whether the court had the power thus to nullify plaintiff's judgment after the term had expired and give the original defendant the opportunity to relitigate an award which it had not appealed within the time limited by the statute.

The plaintiffs, husband and wife, originally sued Gimbel Brothers, Inc. in assumpsit for breach of warranty alleging that the wife-plaintiff sustained injuries from defective glassware which she had purchased from the defendant. Gimbel Brothers brought in the supplier, Anchor Hocking Glass Corp., as an additional defendant, alleging that, if any liability existed, Anchor Hocking was alone liable to the plaintiffs or was liable over to the defendant because it impliedly had warranted to the wife-plaintiff and to the defendant that the glassware was free of defects. The case was submitted to arbitration in accordance with rules of the Municipal Court (now County Court) of Philadelphia, adopted pursuant to the Act of June 20, 1957, P. L. 336, §1, 5 PS §30, which extended to that court the right previously given to the "several courts of common pleas" by "rules of court" to provide that certain cases should first be submitted to arbitration by boards or panels of attorneys. See §8.1 of the Act of June 16, 1836, P. L. 715, which was added by §1 of the Act of January 14, 1952, P. L. (1951) 2087, 5 PS §30.

On November 15, 1959, the arbitrators filed a report and award containing findings (1) for the wife-plaintiff in the sum of $400 against Gimbels, (2) for Gimbels in the sum of $400 against Anchor Hocking, and (3) for Gimbels and Anchor Hocking against the husband-plaintiff. On November 30, 1959, Anchor Hocking filed an appeal from the award. Gimbels did not file an appeal, and on December 11, 1959, after the statutory appeal period had passed, the wife-plaintiff caused judgment to be entered in her favor and against Gimbels in accordance with the award.

On May 11, 1960, five months after the judgment had been entered and more than two months after the term had expired, Gimbels obtained a rule against the plaintiff and the additional defendant to show cause why it should not be allowed to "join in the appeal of Anchor Hocking upon tender of one-half the costs". Gimbel's rule was made absolute and the wife-plaintiff, over protest, was required to retry her case against Gimbels de novo. On this trial, there was a decision against her and in favor of both defendants. She appeals from orders of the court below dismissing her exceptions to the trial judge's decision in favor of Gimbels and the entry of judgment in its favor against her.

1. Unlike a judgment entered by confession or upon default, which remains within the control of the court indefinitely and may be opened or vacated at any time upon proper cause shown, a judgment entered in an adverse proceeding ordinarily cannot be disturbed after the expiration of the term at which it is entered. See *Dormont Motors, Inc. v. Hoerr*, 132 Pa. Superior Ct. 567, 1 A. 2d 493 (1938). This doctrine, respecting judgments entered after hearing, has a very definite function, namely, to establish a point at which litigants, counsel and courts ordinarily may regard contested lawsuits as being at an end. See *Kappel v. Meth*, 125 Pa. Superior Ct. 443, 189 A. 795 (1937). The rule that adverse judgments may not be opened after the expiration of the term is not absolute, but the discretionary power of the court over such judgments is quite limited. *Dormont Motors, Inc. v. Doerr*, supra. Generally, the rule has been relaxed only where fraud appeared or the circumstances were so grave or compelling as to constitute "extraordinary cause" justifying intervention by the court. Ibid.

In our opinion in the *Dormont Motors* case, where we refused to permit a judgment to be disturbed after

the term, we cited with approval and relied, in part, upon a statement by the Supreme Court in *Norris v. Crowe,* 206 Pa. 438, 55 A. 1125 (1903), reiterating the ancient principle that "in no case is ignorance or mistake of the law, with a full knowledge of the facts, per se, a ground for equitable relief".

In *Betts v. Y. M. C. A.,* 88 Pa. Superior Ct. 568 (1926), also cited in the *Dormont Motors* case, a husband and wife sued for injuries allegedly sustained by the wife as a result of the negligence of the defendant's employes. On August 3, 1923, separate judgments were entered upon verdicts awarding $609.28 to the wife and $1,650.50 to the husband. On August 23, 1923, the defendant's counsel attempted to appeal both judgments, but, through oversight, filed only one appeal. Upon being required to designate the judgment to which this appeal should apply, counsel elected to have it refer to the husband's judgment. We reversed the husband's judgment on the ground that the defendant, being a public charity, could not be held responsible for the negligence of its employes. *Betts v. Y. M. C. A. of Erie,* 83 Pa. Superior Ct. 545 (1924). Following our decision, execution was issued on the wife's judgment and the court below ordered the execution set aside. We reversed this order, on appeal, pointing out that the lower court had no power to deprive the wife of the fruits of her victory after the expiration of the term at which her judgment had been entered even though her judgment would have been reversed if an appeal had been filed within the time prescribed by law.

Since no fraud was shown and an error or oversight by counsel in failing to appeal does not constitute "extraordinary cause", the action of the lower court cannot be sustained as a proper exercise of the limited discretion vested in it over adverse judgments entered at a previous term.

2. While we have found no appellate cases involving the allowance of appeals nunc pro tunc under the

compulsory arbitration provisions of the Act of 1836, as amended, the doctrine prohibiting the allowance of appeals nunc pro tunc under circumstances such as are present in this case is so firmly established in analogous situations there can be no doubt that it is also applicable here.

In *Ward v. Letzkus*, 152 Pa. 318, 25 A. 778 (1893), a judgment of a justice of the peace was appealed to a common pleas court. Upon application setting forth only that the appellant's counsel, through forgetfulness, had failed to file the transcript on or before the return day specified in the applicable statute, the lower court, several months after the return day, made absolute a rule to show cause why the appeal should not be filed nunc pro tunc. On appeal the Supreme Court reversed this order as an abuse of discretion. After quoting the provisions of the statute which required transcripts to be filed on or before a designated return day, the Supreme Court said: "This is the command of the act of assembly, and without saying that under no circumstances could the court of common pleas allow an appeal nunc pro tunc, we are quite sure it should not have been done in this case. No reason is given beyond the neglect of counsel. The counsel was the mere agent of the client, Houk v. Knop, 2 Watts 72, and the neglect of the one was the neglect of the other."

Another case illustrating the limitations which have been placed upon the power of courts to allow appeals nunc pro tunc is *Harris v. Mercur (No. 1)*, 202 Pa. 313, 51 A. 969 (1902), a case tried without jury under the provisions of the Act of April 22, 1874, P. L. 109, 12 PS §§688-692. That act requires exceptions to be filed within thirty days after service of notice of the filing of the trial judge's decision. In the *Harris* case timely exceptions had been filed by the defendant. Upon the plaintiff's application, the lower court allowed the plaintiff to file exceptions nunc pro tunc about ninety

days after service. Subsequently, the plaintiff, by writ of certiorari, sought to review an order of the lower court dismissing his exceptions. On motion of the appellee, the Supreme Court quashed his appeal, stating: "The commands of a statute cannot be waived or dispensed with by a court. They require implicit obedience as well from the court as from its suitors: Bleecker v. Wiseburn, 5 Wend. 136. 'It has been repeatedly held', says Mr. Sedgwick (Construction of Statutory and Constitutional Law, 277), 'that courts have no dispensing power, even in matters of practice, when the legislature has spoken. Thus, where a statute declares that a judge at chambers may direct a new trial if application is made within ten days after judgment, it has been said that 'he can no more enlarge the time than he can legislate in any other matter.' When a statute fixes the time within which an act must be done, the courts have no power to enlarge it, although it relates to a mere question of practice".

In *Wise v. Cambridge Springs Borough,* 262 Pa. 139, 104 A. 863 (1918), a leading case, the Supreme Court said: "Where an act of assembly fixes the time within which an act must be done, as for example an appeal taken, courts have no power to extend it, or to allow the act to be done at a later day, as a matter of indulgence. Something more than mere hardship is necessary to justify an extension of time, or its equivalent, an allowance of the act nunc pro tunc . . ." The Supreme Court also said: "Where a party has been prevented from appealing by fraud, or by the wrongful or negligent act of a court official, it has been held that the court has power to extend the time for taking an appeal . . . But where no fraud or anything equivalent thereto is shown such appeals cannot be allowed. . . . The mistake or neglect of the attorney for the party desiring to appeal is not sufficient ground for relief: Ward v. Letzkus, 152 Pa. 318, 319."

In our own decisions involving reviews by certiorari or appeals de novo from judgments entered before magistrates, justices of the peace, or aldermen, we have uniformly followed the doctrine of the *Ward, Harris,* and *Wise* cases, supra. See, e.g., *Dougherty v. Greggs,* 159 Pa. Superior Ct. 166, 48 A. 2d 149 (1946); *Adelman v. John McShain, Inc.,* 148 Pa. Superior Ct. 138, 24 A. 2d 703 (1942); *Higgins v. The Educators,* 147 Pa. Superior Ct. 400, 24 A. 2d 19 (1942); *Laska v. Zelazowski,* 134 Pa. Superior Ct. 311, 4 A. 2d 207 (1939); and *Schwartz Bros. v. Adams Express Company,* 75 Pa. Superior Ct. 402 (1921). We see no reason why this doctrine should apply to appeals from judgments entered by the minor judiciary but not to appeals from awards filed by boards of arbitrators. Here again, there is no rule absolutely prohibiting the allowance of an appeal nunc pro tunc in any case, but a doctrine which ordinarily permits an exercise of the court's discretionary power only in cases where "fraud or its equivalent" is shown. There was no such showing here.

The defendant's argument that this was all one case and that Anchor Hocking's appeal inured to Gimbel's benefit cannot be sustained. Cf. *Morgan v. Pittsburgh Business Properties, Inc.,* 198 Pa. Superior Ct. 254, 181 A. 2d 881 (1962). This argument is based upon Anchor Hocking's liability over for the plaintiff's recovery against Gimbels and its participation with Gimbels in defending the plaintiff's suit. It may be that Anchor Hocking has an appealable interest as to the plaintiff's award for these reasons. See *Fowler v. Jersey Shore Borough,* 17 Pa. Superior Ct. 366 (1901). But this did not make Gimbels, whose rights and liabilities were distinct and different from those of Anchor Hocking, a party appellant in that appeal, as to which it was already an appellee, and no order could be entered on that appeal affecting the rights of the plaintiff and Gimbel inter se. Ibid. Cf. *Betts v. Y. M. C. A.,* supra,

and *Morgan v. Pittsburgh Business Properties, Inc.,* supra.

3. In its opinion the court below affirmed the allowance of Gimbel's appeal and the subsequent decision in its favor on the following grounds: (a) that there is no statutory procedure governing compulsory arbitration in Philadelphia because the Act of 1836 was repealed, insofar as it relates to compulsory arbitration in Philadelphia, by the Act of May 1, 1861, P. L. 521, §1, 5 PS §146; (b) that the Act of June 20, 1957, P. L. 336, which extends to the Municipal Court (now the County Court) of Philadelphia the same authority which previously had been granted only to the "several courts of common pleas" empowers the County Court to establish its own procedures for compulsory arbitration by rules of court; and (c) that the interpretation of the County Court's own rules, unlike statutes, is for the judges of that court.

If the legislature had intended to authorize trial courts to establish their own independent systems of compulsory arbitration entirely "by rules of court", the appropriate method would have been to enact a new statute so providing, instead of engrafting numerous amendments upon the Act of June 16, 1836, P. L. 715, 5 PS §1 et seq., which already provided for an elaborate and uniform system of reference and arbitration. That the Supreme Court discerned no such intention is apparent from its decision in the *Smith Case,* 381 Pa. 223, 112 A. 2d 625 (1955), which held constitutional only rules of court which adopt "as an entirety" the system of arbitration by boards or panels of attorneys which is contained in the pertinent provisions of the Act of 1836, as modified by the various provisions contained in the basic amendment of 1952. Act of January 14, 1952, P. L. (1951) 2087. The opinion of the Supreme Court clearly indicates that it considered the pertinent provisions of the original act to

be operative in arbitration proceedings before boards or panels of attorneys. This is apparent from the statement in its opinion that the court was "concerned . . . with those sections of the Act [of 1836], 8 to 38 inclusive, which provide for *compulsory* arbitration" and its observation that "[t]he Act of 1952, greatly enlarg[ed] . . . the scope of the Act of 1836 . . ." That rules of court concerning arbitration by attorneys are valid only insofar as they comply with or supplement the pertinent provisions of the Act of 1836, as amended, is apparent from the Supreme Court's holding that rules may not be adopted which limit the submission to arbitration of cases involving a sum less than that prescribed in the enabling legislation. In the language of the Supreme Court: ". . . the system must be adopted as an entirety and as prescribed by the Act or not at all. There can be no variances between the counties in that respect."

The fact that the compulsory arbitration provisions in the Act of 1836 were repealed, insofar as Philadelphia is concerned, by the Act of 1861, supra, does not support the lower court's conclusion that its procedures, unlike those which obtain in other counties, are governed solely by rules of court. Here again, if the legislature had intended such a drastic step, it doubtless would have done so by enacting a new statute so providing. Nothing of the kind was done. The legislature merely amended the existing legislation by adding after the words "courts of common pleas" the words "and the Municipal Court of Philadelphia". Act of June 20, 1957, P. L. 336. Even if the *Smith Case,* supra, had not been decided before this 1957 Amendment, we could not infer from that legislation an intention on the part of the legislature to authorize a different system for compulsory arbitration by attorneys in Philadelphia from that previously authorized in other counties. The obvious intention of the legislature was to achieve a uni-

form system throughout the Commonwealth. To the extent that the Act of 1861 might inhibit this aim, it was impliedly repealed.

The orders of the court below dismissing the wife-plaintiff's exceptions to the decision of the trial judge for the original defendant and entering judgment for that defendant are reversed.