[J-39-2014] [MO: Castille, C.J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | |
|---|---|
| ASHLEY ZAUFLIK, | : No. 1 MAP 2014 |
| | : |
| Appellant | : Appeal from the Order of the |
| | : Commonwealth Court dated July 3, 2013 at |
| | : No. 1219 CD 2012 affirming the order of |
| v. | : the Bucks County Court of Common Pleas, |
| | : Civil Division, dated May 24, 2012, |
| | : Judgment Entered June 7, 2012, at no. |
| PENNSBURY SCHOOL DISTRICT, | : 2007-09693-27-1. |
| | : |
| Appellee | : ARGUED:   May 6, 2014 |

## CONCURRING OPINION

**MR. JUSTICE BAER**                                        **DECIDED:   November 19, 2014**

I join the finely crafted majority opinion in its entirety.   I write separately because I can envision a scenario where a personal injury victim is able to prove that the $500,000 statutory cap on damages, which has not been increased since its enactment in 1978, violates the right to a jury trial as guaranteed by Article I, Section 6 of the Pennsylvania Constitution.   The majority holds that Article I, Section 6 precludes the imposition of "onerous procedural barriers" on the exercise of the jury trial right but that the statutory damages cap at issue herein affects a different matter, *i.e.*, a substantive limit on the damages ultimately recovered after a full jury trial.   Slip Op. at 59.   Although I agree with the majority that the jury trial Appellant demanded and received was not impaired in the instant case, it appears to me that through a properly developed record, a victim may be able to establish that the statutory damages cap constitutes an onerous procedural barrier to the jury trial right in violation of Article I, Section 6.

Article I, Section 6 provides "[t]rial by jury shall be as heretofore and the right thereof remain inviolate." PA. CONST. art. I, § 6. Based on this provision, the petitioner in the case of Application of Smith, 112 A.2d 625 (Pa. 1955), challenged a statute and local rule of court promulgated pursuant to that statute, which required compulsory arbitration of certain claims where the sum requested was less than a specified amount. The statute afforded a right to appeal the arbitrators' decision to the trial court where a jury trial could be conducted, but required that the party appealing the arbitration award pay the arbitrators' fee. The petitioner argued that the statutory requirement that the appellant pay the fee constituted an onerous and unconstitutional restriction upon the right to present his case to a jury.

This Court rejected the contention that the payment of the arbitrators' fees constituted an onerous condition, but acknowledged that one's ability to present an issue to a jury "must not be burdened by the imposition of onerous conditions, restrictions or regulations which would make the [jury trial] right practically unavailable." Id. at 629. The Court reasoned that the payment of the arbitrators' fee was akin to requiring the payment of a jury fee as a condition precedent to the right of a jury trial, which had previously been upheld. Id. at 630 (citing Gottschall v. Campbell, 83 A. 286, 291 (Pa. 1912) (holding that the payment of a jury fee did not impose a substantial burden upon the constitutional right to a jury trial)).

We explained that "[t]he problem, however, is one of degree rather than of kind." Id. at 630. We held that where a claim sought such a small amount of damages that the necessity of paying the arbitrators' fee would operate as a strong deterrent to seeking a jury trial, the local court rules should provide for a lower rate of compensation for the arbitrators. Id. Accordingly, we upheld the validity of the statute, but opined that the local rule of court should be amended to lower the arbitrators' fee where a comparatively

small claim is involved, in order to prevent the practical denial of the jury trial right. Id. Our analysis in Smith suggests that a statutory requirement that renders cost-prohibitive the exercise of the jury trial right violates Article I, Section 6. This becomes relevant when one considers the practicalities of litigating a catastrophic injury case against a political subdivision. While there is no evidentiary record concerning the costs and fees incurred to prosecute the instant litigation, I believe that a victim of a political subdivision's negligence in a complicated case may be able to establish that the costs and fees of litigating the claim precluded counsel from accepting the case, thereby denying the victim the right to present the case to a jury.

To meet the well-financed and vigorous defenses asserted by insurance companies and their counsel and to comply with basic Pennsylvania law, I conclude, premised on my thirteen years as a trial court judge, that plaintiffs' counsel in complex litigation are required to retain multiple liability and damages experts who are, in turn, mandated to develop their theories to a reasonable degree of certainty, provide detailed expert reports, sit for depositions, and often provide live testimony at the cost of tens of thousands of dollars.

Distinct from 1978, when the statutory damages cap was enacted, it is now necessary and extraordinarily expensive to produce demonstrative evidence such as complex accident reconstructions, biomechanical and human factor recreations, "day in the life" videos, as well as other types of recreations and animations. These are often used in opening statements and closing arguments, as well as during trial, necessitating complex and careful development to ensure admissibility, and requiring an operator to coordinate the audio-visual display as counsel presents the case. There are also enormous sums expended for discovery and mediations, which each cost thousands or tens of thousands of dollars, as well as the inevitable miscellaneous expenditures for

travel, lodging, meals and the like, which aggregate throughout all complex litigation. All of these expenses are without consideration of the contingent fees and general overhead every lawyer must charge and consider before accepting a case.

Simply put, plaintiffs' counsel cannot responsibly agree to enter an appearance in a case where there will be no or *de minimis* return to the client because of the costs and fees necessary to secure a successful result. Counsel also cannot accept a case where required costs are disproportionate to a potential fee. It would simply be "bad business," notwithstanding the empathy the lawyer would feel for an injured client, to risk tens or hundreds of thousands of dollars in costs in light of the statutorily imposed cap on recovery.

It is obvious that money in 2014 does not spend as it did in 1978. Notably, that year the Governor of Pennsylvania earned somewhere around $70,000. Today his salary exceeds $180,000. In 1978, a member of the General Assembly, which passed the cap under scrutiny herein, earned $25,000 a year. Today a legislator earns approximately $84,000. Notwithstanding this clear evidence of inflation, the cap remains the same. In accord with the Smith analysis, assuming an evidentiary proffer that $500,000 would not cover costs and fees incurred in pursuing complex personal injury litigation, it would appear that the statutory cap presents an "onerous procedural barrier" to an injured plaintiff's guaranteed right to a jury, and, thus, violates Article I, Section 6. We must, however, await the development of a record before so holding.

Having said all this, I hope the Legislature renders this analysis and any future litigation moot. I would like to think that the failure to raise the cap has been inadvertent on its part. In its wisdom, it decided to create these causes of action against government subdivisions to protect our citizenry against the tyranny of injury without compensation. As evidenced by the record in this case and discussed below, many political subdivisions

are able to purchase affordable insurance equal to a reasonable cap. It is my hope that the Legislature will become cognizant of its oversight through this case, raise the cap to a level that is obviously constitutional, and thereby protect the people it serves while safeguarding governmental entities by allowing for or, indeed, mandating reasonable insurance to protect them in an amount equivalent to the statutory damages cap.

In furtherance of these thoughts, I highlight two salient points. First, the defendant in this case, Pennsbury School District, carries $11 million in insurance, to protect itself against all manner of potential liability. The record herein does not indicate what it would cost to extend this insurance to the operation of motor vehicles by the school district, but I suspect that the cost would be a relatively small percentage of an overall school district budget. Moreover, it is significant that the Public Utility Commission has provided that to the extent school districts contract with private carriers to shuttle students, those contractors must carry at least $5 million in liability insurance. See 52 Pa. Code § 32.11(d) (requiring a common carrier of passengers on a motor vehicle capable of transporting more than 28 passengers to carry at least $5 million in liability insurance).

Accordingly, it is my hope that this case will serve as an impetus for legislative action to increase the $500,000 limitation on recovery from political subdivisions before this Court is constrained to analyze this issue on a record developed in accord herewith.

Madame Justice Todd and Mr. Justice Stevens join this concurring opinion.