IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kim Myers and Jarvis Payton,       :
                        Appellants   :
                                 :
          v.              : No.  275 C.D. 2022
                                 : Argued:  March 6, 2023
Nikolas Romito and Simone      :
Molotsky                      :

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE STACY WALLACE, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                         FILED:  April 18, 2023

Kim Myers (Myers) and Jarvis Payton (Payton) appeal from the Court of Common Pleas of Philadelphia County's (trial court) order denying their petition for relief from a judgment of non pros,[1] which the trial court entered following Myers' and Payton's failure to appear at an arbitration hearing.  On appeal, Myers and Payton argue the trial court abused its discretion in denying their petition, because (a) they were excused from participating in compulsory arbitration since the arbitration program did not have jurisdiction to hear their case, and (b) the trial

---

[1] Non pros is an abbreviation for *non prosequitur*, which Black's Law Dictionary indicates is Latin for "he does not prosecute," and defines as a "judgment rendered against a plaintiff who has not pursued the case."  Black's Law Dictionary 1269 (11th ed. 2019).

court's judgment of non pros violated their constitutional and statutory rights to a jury trial.[2] Upon review, we affirm.

## I. Background

On October 27, 2019, Myers and Payton filed a civil complaint in the trial court against Nikolas Romito and Simone Molotsky (police officers). Reproduced Record (R.R.) at 6. In their complaint, Myers and Payton alleged the police officers, acting in their official capacities as patrol officers for the Philadelphia Police Department, stopped their vehicle on October 28, 2017 and then falsely imprisoned and assaulted them.[3] *Id.* at 8-13. Myers and Payton did not allege they suffered any

---

[2] We have reframed Myers' and Payton's issues on appeal for clarity and ease of analysis.

[3] The relevant factual allegations from Myers' and Payton's complaint are as follows:

> 9. Upon exiting the patrol vehicle, Defendant Molotsky asked Plaintiff Payton for his driver's license and proof of insurance and registration for the [vehicle]. Defendant Romito stood outside of Plaintiff Myers' passenger window, watching her.
> 10. After Plaintiff Payton provided his driver's license to Defendant Molotsky, Defendants gave Plaintiff Myers permission to open the [vehicle]'s glove box to obtain the registration and insurance cards.
> 11. Plaintiff Myers retrieved the insurance and registration credentials from the glovebox then immediately closed the glovebox. However, before she was able to give the credentials to Defendants, Defendant Romito started panicking.
> 12. Defendant Romito unholstered his Glock pistol, pointed it in the direction of Plaintiff Myers' head and started hysterically accusing her of having a gun inside of her vehicle's glovebox. Before Plaintiff Myers could explain that she had [a] valid license to carry, Defendant Romito started loudly yelling, while still pointing his Glock pistol at her, "Gun, gun. She has a gun."
> 13. Defendant Romito then immediately snatched Plaintiff Myers out of the [vehicle] and informed her that she was going to jail, placed her in handcuffs, and put her in the back of a police vehicle.
> 14. As Defendant Romito took Plaintiff Myers into custody at gunpoint, Defendant Molotsky did the same to Plaintiff Payton, even though he did not possess or have access to Plaintiff Myers' gun. Plaintiff Payton was also advised that he was going to jail for illegal gun possession.
> 15. While both Plaintiffs were locked in the back of separate police vehicles, Defendants subsequently verified that Plaintiff Myers had a valid license to carry.

**(Footnote continued on next page…)**

2

physical injuries during this incident. *See id.* at 8-10. Nevertheless, they sought damages "in an amount in excess of Fifty Thousand Dollars ($50,000) plus interest and the cost of suit, and such other further relief as is just and proper." *Id.* at 10-13.

On February 6, 2020, after the conclusion of an initial case management conference, trial court Judge Daniel Anders (Judge Anders) issued a Case Management Order, which set forth various procedural deadlines and a date by which he expected the case to be ready for trial. R.R. at 14-15. By order entered February 28, 2020, however, Judge Anders, "having determined that the amount in controversy [was] below the mandatory arbitrations limits," referred the matter to arbitration pursuant to Pennsylvania Rule of Civil Procedure 1021(d), Pa.R.Civ.P. 1021(d).[4] *Id.* at 16.

On March 2, 2020, Myers and Payton filed a motion requesting the case be removed from compulsory arbitration and placed back on the jury trial list. R.R. at 3, 17-19. In their motion, Myers and Payton alleged that "[t]he sole basis" for Judge Anders' decision to refer the case to arbitration was the police officers' "preference for the more defense friendly arbitration forum," and that the trial court considered "no evidence, no law, no argument, [and] no briefing . . . ." *Id.* at 19. As a result, Myers and Payton alleged Judge Anders' decision violated their constitutional and

---

Defendants eventually released Plaintiff Myers from the back of the police vehicle but did not release Plaintiff Payton from the back of the patrol car until after, approximately, an additional thirty minutes.

16. Both Plaintiffs were subsequently released without being criminally charged, except that Defendants issued Plaintiff Myers a citation for permitting Plaintiff Payton to operate her vehicle while having a suspended driver's license.

17. As a direct consequence of Defendants' actions, Plaintiffs have suffered severe emotional distress, temporary loss of liberty, among other things.

R.R. at 8-10.

[4] "The court on its own motion or motion of any party may by discovery, pre-trial conference, hearing or otherwise, determine the amount actually in controversy and enter an order of reference to arbitration." Pa.R.Civ.P. 1021(d).

3

statutory rights to a jury trial. *Id.* The trial court assigned Myers' and Payton's motion to Judge Edward Wright. *Id.* at 3.

By order docketed June 8, 2020, Judge Wright deferred to Judge Anders' previous decision and denied Myers' and Payton's request to remove the case from compulsory arbitration. R.R. at 25. Judge Anders ultimately scheduled an arbitration hearing for January 10, 2022, but Myers and Payton did not appear at the arbitration hearing.[5] Pursuant to Pennsylvania Rule of Civil Procedure 1303(b)(2) and Philadelphia County Local Rule 1303(a), the board of arbitrators transferred the case "to the major non-jury program with the consent of all parties present to be heard before a judge of the [trial court] . . . ." Pa.R.Civ.P. 1303(b)(2); Phila.Civ.R. *1303(a); Trial Ct. Op., 5/25/22, at 2. The trial court then entered a judgment of non pros against Myers and Payton for their failure to appear at the scheduled arbitration hearing.

On January 16, 2022, Myers and Payton filed a petition for relief from the trial court's judgment of non pros pursuant to Pennsylvania Rule of Civil Procedure 3051, Pa.R.Civ.P. 3051. R.R. at 4, 29. In addition to the arguments Myers and Payton asserted in their motion to have the case removed from arbitration, Myers and Payton alleged Judge Anders "intentionally misplaced" the case "into compulsory arbitration as a result of personal bias and animosity towards black litigants." *Id.* at 31. On March 8, 2022, trial court Judge Abbe Fletman denied Myers' and Payton's petition for relief from judgment of non pros. Myers and Payton timely appealed to this Court.

---

[5] Myers and Payton filed a motion for a jury trial on January 10, 2022, refusing to attend arbitration and "claiming Judge Anders committed 'obvious legal error' in determining the amount in controversy in [Myers' and Payton's] case was within arbitration limits and assert[ing], '[b]ecause of their political beliefs, [Myers and Payton] would commit suicide before trying this case before a judge or arbitration.'" *See* R.R. at 4; Trial Ct. Op., 5/25/22, at 2.

4

## II.    Analysis

In reviewing a trial court's decision to deny a petition to open or strike a judgment of non pros, this Court's review is limited to determining whether the trial court abused its discretion. *Womer v. Hilliker*, 908 A.2d 269, 279 (Pa. 2006) (citation omitted). "An abuse of discretion is not merely an error of judgment. . . . Rather, discretion is abused only 'if in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record.'" *Neshaminy Constructors, Inc. v. Plymouth Twp.*, 572 A.2d 814, 817 n.1 (Pa. Cmwlth. 1990) (citation omitted). Thus, we will only overturn a trial court's decision to deny a petition to open or strike a judgment of non pros if it "reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Womer*, 908 A.2d at 279.

When a board of arbitrators "is convened for hearing, if one or more parties is not ready the case shall proceed and the arbitrators shall make an award unless the court (1) orders a continuance, or (2) hears the matter if the notice of hearing contains the statement required by subdivision (a)(2) and all parties present consent." Pa.R.Civ.P. 1303(b). Philadelphia County Local Rules also provide that "if one or more parties is not present at the [arbitration] hearing, the matter may be heard at the same time and date before a judge of the court without the absent party or parties." Phila.Civ.R. *1303. When that occurs, the trial court may "take action not available to the arbitrators, including the entry of a nonsuit if the plaintiff is not ready or a non pros if neither party is ready." Pa.R.Civ.P. 1303(b) cmt.

Once a trial court enters a judgment of non pros, a plaintiff may petition the trial court for relief from the judgment of non pros pursuant to Pennsylvania Rule of

5

Civil Procedure 3051. "A request to open a judgment of non pros, like the opening of a default judgment, is in the nature of an appeal to the equitable powers of the court." *Madrid v. Alpine Mountain Corp.*, 24 A.3d 380, 382 (Pa. Super. 2011) (citation omitted). Rule 3051 establishes the requirements for obtaining relief from a judgment of non pros as follows:

> (a) Relief from a judgment of non pros shall be sought by petition. All grounds for relief, whether to strike off the judgment or to open it, must be asserted in a single petition.

> (b) Except as provided in subdivision (c), if the relief sought includes the opening of the judgment, the petition shall allege facts showing that

>> (1) the petition is timely filed,

>> (2) there is a reasonable explanation or legitimate excuse for the conduct that gave rise to the entry of judgment of non pros, and

>> (3) there is a meritorious cause of action.

Pa.R.Civ.P. 3051. "Any appeal related to a judgment of non pros lies not from the judgment itself, but from the denial of a petition to open or strike." *Madrid*, 24 A.3d at 382.

The trial court denied Myers' and Payton's petition for relief from a judgment of non pros because it determined they did not provide a reasonable explanation or legitimate excuse for failing to appear at their arbitration hearing. Trial Ct. Op., 5/25/22, at 7-8. The trial court noted in its written opinion that Myers' and Payton's lawyer sent an email to the police officers' lawyer wherein he

> referred to arbitration as a 'cat scratch pile' and stated that he 'would kill [himself] before [he] did arbitration.' (Answer to Petition, Exhibit A, Dkt. At 2/4/22 ¶¶ 2, 14). In that correspondence, [Myers' and Payton's lawyer] also wrote, 'We will get our trial date after we intentionally fail to show up for that stupid ass arbitration 'scheme' next

6

month. That is why I am not filing any more motions about it. Only an idiot would put these cases in arbitration.' (*Id.* at ¶ 16). [Myers' and Payton's lawyer] further asserted, 'Plaintiffs do not have to show up to arbitration because the arbitration court has no jurisdiction over their cases that seek more than $50K. So, no matter what, we would not show up to arbitration.' (*Id.* at ¶ 5). [Myers' and Payton's lawyer] maintained that '[p]laintiff Myers would never attend an arbitration proceeding on a police brutality case and would just no-show and appeal for a jury. The whole arbitration 'scheme' has no traction on this road.' (*Id.* at ¶ 10).

Trial Ct. Op., 5/25/22, at 4. Myers' and Payton's lawyer did not deny making any of these comments in this appeal, rather he defended making them, as follows:

> Second, it is true that the undersigned said, in an email to [the police officers'] counsel, "We will get our trial date after we intentionally fail to show up for that stupid ass arbitration 'scheme' next month." Counsel is well within his rights to express righteous indignation[6] in the face of manifest injustice, and he should not be punished for his protected speech. U.S. Const. amend. I. [The police officers'] argument should be rejected to the extent that it implies that [Myers' and Payton's] rights should be denied because they have a negative view of the arbitration program's appropriateness for this case. <u>Rosenberger v. Rector</u>, 515 U.S. 819, 829-830 (1995)(observing that viewpoint discrimination violates the First Amendment).

Appellants' Reply Br. at 7.

---

[6] As our Superior Court aptly set forth in *Hall v. Reeb*, 555 A.2d 926, 928 (Pa. Super. 1989), "[w]e do not, under any circumstances countenance the temerity of any member of the bar who instructs or encourages a party to intentionally fail to appear at a scheduled arbitration hearing . . . ." Rather, we exhort all members of the bar to thoroughly research their positions, as knowledge and understanding can remove the blinders that far too often accompany righteous indignation.

**A. Myers' and Payton's Arguments on Appeal**

In this appeal, Myers and Payton argue the trial court abused its discretion in failing to grant their petition for relief from its judgment of non pros because they had a legitimate excuse for not attending arbitration. Myers and Payton argue that pursuant to the plain language of 42 Pa.C.S. § 7361(b)(2)(i), compulsory arbitration programs do not have jurisdiction to hear cases where the litigants request more than $50,000 in damages. *See* Appellants' Br. at 10. To support this position, Myers and Payton cite *Robert Half International Inc. v. Marlton Technologies, Inc.*, 902 A.2d 519, 529 (Pa. Super. 2006), for the proposition that "the monetary limits of compulsory arbitration are jurisdictional." Accordingly, Myers and Payton believe that their request for over $50,000 of damages "automatically divested" the arbitration program of jurisdiction, excusing them from participation. Appellants' Br. at 11-12.

Even if the arbitration program was not automatically divested of jurisdiction, Myers and Payton argue they were excused from attending arbitration because Judge Anders erred in placing this case in arbitration. Although Myers and Payton concede that a trial court "can determine an amount in controversy" pursuant to Pennsylvania Rule of Civil Procedure 1021(d) (Rule 1021(d)), they argue Rule 1021(d) requires a trial court to "first hav[e] a basis for its determination by obtaining actual evidence through 'discovery, pretrial conference, hearing or otherwise.'" *See* Appellants' Br. at 13 (quoting Pa.R.Civ.P. 1021(d)). Since the trial court issued its decision before receiving any evidence, Myers and Payton argue it failed to follow the procedure set forth in Rule 1021(d) for referring the case to compulsory arbitration.

Myers and Payton also argue the trial court abused its discretion in failing to grant their petition for relief from its judgment of non pros because Pennsylvania's

8

Constitution and statutes guarantee them a right to a trial by jury. *See* Appellants' Br. at 15-16. Since they demanded a jury trial in writing, Myers and Payton argue the trial court violated their right to a jury trial by conditioning their right on participation in compulsory arbitration and by dismissing their case with prejudice after they did not participate. *Id.* at 16.

## B. Compulsory Arbitration – Amount in Controversy

Pennsylvania's compulsory arbitration program is governed by Section 7361 of the Judiciary Code, as follows:

> **(a) General rule.**--Except as provided in subsection (b), when prescribed by general rule or rule of court such civil matters or issues therein as shall be specified by rule shall first be submitted to and heard by a board of three members of the bar of the court.
>
> **(b) Limitations.**--No matter shall be referred under subsection (a):
>
>> (1) which involves title to real property; or
>>
>> (2) where the *amount in controversy*, exclusive of interest and costs, exceeds $50,000.
>
> **(c) Procedure.**--The arbitrators appointed pursuant to this section shall have such powers and shall proceed in such manner as shall be prescribed by general rules.
>
> **(d) Appeal for trial de novo.**--Any party to a matter shall have the right to appeal for trial de novo in the court. The party who takes the appeal shall pay such amount or proportion of fees and costs and shall comply with such other procedures as shall be prescribed by general rules. In the absence of appeal the judgment entered on the award of the arbitrators shall be enforced as any other judgment of the court. For the purposes of this section and section 5571 (relating to appeals generally) an award of arbitrators constitutes an order of a tribunal.

42 Pa.C.S. § 7361 (bold in original, italics added).

Pennsylvania Rule of Civil Procedure 1021 establishes a trial court's procedure for making a "Determination of Amount in Controversy" as follows:

> (c) In counties having rules governing compulsory arbitration the plaintiff shall state whether the amount claimed does or does not exceed the jurisdictional amount requiring arbitration referral by local rule.
>
> (d) **The court on its own motion** or motion of any party may by discovery, pre-trial conference, hearing or otherwise, determine the **amount actually in controversy** and enter an order of reference to arbitration.

Pa.R.Civ.P. 1021(c), (d) (emphasis added).

A litigant's request for damages that exceed Pennsylvania's compulsory arbitration limit does not forever divest the compulsory arbitration program of jurisdiction over the case. Although Myers and Payton are correct in noting that 42 Pa.C.S. § 7361(b)(2) states "[n]o matter shall be referred [to compulsory arbitration] where the amount in controversy . . . exceeds $50,000," Myers and Payton are not correct in their belief that the "amount in controversy" is fixed by the subjective amount of damages a litigant requests. Instead, Rule 1021(d) recognizes a trial court's unique position and authority to determine the "amount actually in controversy" before trial. *See* Pa.R.Civ.P. 1021(d).

If trial courts did not have the authority to determine the amount actually in controversy and refer appropriate cases to arbitration, every litigant who wished to avoid arbitration would simply request an amount of damages that exceeds the arbitration limit. This would quickly turn Pennsylvania's compulsory arbitration program into a voluntary arbitration program. In *Robert Half*, the Superior Court recognized this, as follows:

> The Court of Common Pleas is better equipped through its extensive pre-trial processes to determine whether the case truly belongs in the

10

trial program or in arbitration. The court's mandatory pretrial conferences and case management deadlines put the court in a better position to decide if the counterclaim is viable or **just a ruse to defeat arbitration jurisdiction**. . . . Of course, the trial court can also remand the case to arbitration if the court resolves through its pre-trial processes that the entire case really belongs in arbitration.

*Robert Half*, 902 A.2d at 529 (citing Pa.R.Civ.P. 1021(d)) (emphasis added). Thus, Rule 1021(d) enables trial court judges to prevent litigants from manipulating Pennsylvania's compulsory arbitration system. This is a critical function for a trial court because "abuses of the arbitration system impede the judiciary's ability to expeditiously dispose of pending litigation which is the overall objection of compulsory arbitration." *Hall v. Reeb*, 555 A.2d 926, 928 (Pa. Super. 1989).

In practice, when a litigant requests less than $50,000 in damages and their case is otherwise eligible for arbitration, a trial court will immediately refer the case to arbitration. When a litigant requests more than $50,000 in damages, a trial court will not immediately refer the case to compulsory arbitration. Instead, a trial court will place the case on a trial track, where it remains until and unless a judge of the trial court determines the amount actually in controversy is less than $50,000 pursuant to Rule 1021(d). If a trial court judge makes that determination, she then refers the case to compulsory arbitration. This practice is widely accepted, and it does not violate 42 Pa.C.S. § 7361(b)(2), because the "amount in controversy" is not forever fixed by the amount of damages a litigant requests.

In determining the amount actually in controversy pursuant to Rule 1021(d), a trial court is not required to consider "evidence," as Myers and Payton argue. To the contrary, Rule 1021(d) does not use the word "evidence." Instead, Rule 1021(d) permits a trial court to determine the amount actually in controversy "by discovery, pre-trial conference, hearing or otherwise." Rule 1021(d)'s use of the disjunctive

word "or," means that any method listed is sufficient by itself. Thus, a trial court can review only discovery materials and determine the amount actually in controversy is below the arbitration limit. A trial court could also only conduct a pre-trial conference or only conduct a hearing and determine the amount actually in controversy is below the arbitration limit. Each option provides the trial court with an opportunity to gather information and make an informed decision before trial.

These methods are not exclusive, however, because Rule 1021(d) also permits a trial court judge to "otherwise" determine the amount actually in controversy. Thus, if a trial court judge can obtain sufficient information to make an informed decision in other ways, Rule 1021(d) permits the trial court judge to do so. In some cases, a trial court judge may even be able to review the pleadings alone and determine the amount actually in controversy is below the arbitration limit.

Myers and Payton alleged in their complaint that the police officers wrongfully arrested and detained them for approximately one hour or less. They did not allege in their complaint that they sustained any bodily injuries in the process. Based on these allegations alone, the trial court determined the amount actually in controversy was less than $50,000. Under the facts of this case, we cannot say that the trial court's determination "reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *See Womer*, 908 A.2d at 279.

Since the trial court's arbitration program was not automatically and forever divested of jurisdiction to hear Myers' and Payton's case because they requested greater than $50,000 in damages and the trial court did not fail to follow the procedures outlined in Rule 1021(d) in referring the case to arbitration, the trial court did not abuse its discretion when it determined the arbitration program's alleged lack

12

of jurisdiction was not a legitimate excuse for Myers' and Payton's failure to appear at arbitration.

## C. Right to Trial by Jury

Myers and Payton argue the trial court's judgment of non pros violated their constitutional[7] and statutory[8] rights to a jury trial. Appellants' Br. at 15-16. The Pennsylvania Supreme Court has already determined Pennsylvania's compulsory arbitration system does not violate a plaintiff's constitutional right to a jury trial, as follows:

> It is true, of course, that . . . the [Pennsylvania] Constitution would be violated by a statute the effect of which was to compel parties to submit to arbitration against their will or without their assent. Indeed compulsory arbitration conflicts also with the 14th Amendment of the Federal Constitution in that it works a deprivation of property and liberty of contract without due process of law. But this is so only where the statute closes the courts to litigants and makes the decision of the arbitrators the final determination of the rights of the parties; **therefore there is no denial of the right of trial by jury if the statute preserves that right to each of the parties by the allowance of an appeal from the decision of the arbitrators or other tribunal.** In [*Capital Traction Co. v. Hof*, 174 U.S. 1, 23 (1899)] it was said, . . . : 'It [the Constitution] does not prescribe at what stage of an action a trial by jury must, if demanded, be had, or what conditions may be imposed upon the demand of such a trial, consistently with preserving the right to it.' The only purpose of the constitutional provision is to secure the right of trial by jury before rights of person or property are finally determined. All that is required is that the right of appeal for the purpose of presenting the issue to a jury must not be burdened by the imposition of onerous conditions, restrictions or regulations which would make the right practically unavailable.

---

[7] "Trial by jury shall be as heretofore, and the right thereof remain inviolate." PA. CONST. art. I, § 6.

[8] "Except where the right to trial by jury is enlarged by statute, trial by jury shall be as heretofore, and the right thereof shall remain inviolate." 42 Pa.C.S. § 5104(a).

13

*Application of Smith*, 112 A.2d 625, 629–30 (Pa. 1955) (emphasis added). Pennsylvania's compulsory arbitration program preserves the right of every litigant to appeal the determination of a board of arbitrators and receive a trial. *See* 42 Pa.C.S. § 7361(d). Accordingly, Myers' and Payton's general argument[9] that conditioning their right to a jury trial on their participation in arbitration violated their constitutional or statutory right to a jury trial is without merit.

Similarly, Myers' and Payton's argument that "the trial court deprived [them] of their right to a jury trial . . . by dismissing their case with prejudice without ever affording them an opportunity to have a jury assess the merits of their case" is without merit. *See* Appellants' Br. at 16. Myers and Payton had an opportunity to have a jury assess the merits of their case; that opportunity simply required them to first participate in arbitration. *See* 42 Pa.C.S. § 7361(d).

No plaintiff is entitled to file his complaint and immediately receive a jury trial. Instead, there are a number of procedural obstacles a litigant must navigate along the winding path to trial. Typically, a litigant must engage with and cooperate in discovery, file and brief or defend dispositive motions, attend status conferences, attend hearings, etc. Although each of these procedures are, in a sense, a condition on a litigant's right to a jury trial, they are not so onerous as to make the right to a

---

[9] Myers and Payton also raised specific arguments for why Pennsylvania law cannot condition litigants' rights to a jury trial upon their participation in compulsory arbitration, including: (1) "it is impossible . . . to participate in 'good faith' in arbitration because [Myers and Payton] seek substantially more damages than the arbitration panel is legally authorized to award," (2) "arbitration . . . requires their attorney to engage in frivolous litigation – in violation of Pa. R. Prof. C. 3.1 – by requesting the arbitration panel to violate the law by awarding [them] more than $50,000," and (3) arbitration "requires [them] to waste limited judicial resources by frivolously litigating their case at an arbitration proceeding that was pre-ordained to be appealed no matter the outcome." Appellants' Br. at 17-18. These specific arguments all lack merit because they rely upon the assumption that the compulsory arbitration program lacked jurisdiction to hear their case because they requested greater than $50,000 in damages.

14

jury trial impracticable. *See Application of Smith*, 112 A.2d at 30. Accordingly, the procedures themselves do not violate a litigant's right to a jury trial. *Id.*

If litigants deliberately fail to participate in a trial court's pretrial procedures, they do not pass go and wind up at trial. Instead, the trial court will dismiss their case. Thus, to get to a trial, litigants must actively participate in the court's pretrial proceedings. A trial court's dismissal of a case due to the litigant's own failure to pursue his case also does not violate the litigant's right to a jury trial.

We see no reason to treat Myers' and Payton's deliberate refusal to participate in compulsory arbitration any differently than if they had refused to engage in other pretrial proceedings. In this case, Myers' and Payton's argument that the trial court erred in dismissing their case due to their failure to appear at arbitration is even less compelling, as they do not deny that they received a notice stating:

> This matter will be heard by a board of arbitrators at the time, date and place specified but, if one or more of the parties is not present at the hearing, the matter may be heard at the same time and date before a judge of the court without the absent party or parties. There is no right to a trial de novo on appeal from a decision entered by a judge.

Pa.R.Civ.P. 1303(a)(2). In addition, a note to Pennsylvania Rule of Civil Procedure 1303(b)(2) states that "[i]n hearing the matter, the trial court may take action not available to the arbitrators, including the entry of a nonsuit if the plaintiff is not ready or a non pros if neither party is ready." Pa.R.Civ.P. 1303(b)(2).

Thus, Myers and Payton knew the trial court scheduled an arbitration hearing in their case. Myers and Payton also knew that if they failed to appear at the arbitration hearing, their case could be heard by a judge in their absence. Myers' and Payton's attorney should have also known that if they failed to attend their arbitration hearing, the trial court could enter a judgment of non pros in their case.

15

Nevertheless, Myers' and Payton's attorney referred to arbitration as a "stupid ass scheme" and refused to attend. As advertised, the trial court entered a judgment of non pros. Under these facts, it was Myers' and Payton's own actions, not the trial court's, that denied them an opportunity for a jury trial.

### III.   Conclusion

For the reasons outlined above, the trial court did not abuse its discretion in denying Myers' and Payton's petition for relief from a judgment of non pros. Therefore, we affirm the trial court's order.

_____
STACY WALLACE, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kim Myers and Jarvis Payton,         :
                      Appellants    :
                                   :
           v.                 : No.  275 C.D. 2022
                                   :
Nikolas Romito and Simone       :
Molotsky                            :

# **O R D E R**

**AND NOW**, this 18th day of April 2023, the order of the Court of Common Pleas of Philadelphia County, entered in this matter on March 8, 2022, is **AFFIRMED**.

_____
STACY WALLACE, Judge